UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRUCE EKLUND, an individual, | |
| Plaintiff/Counter-Claim Defendant, | |
| v. | C06-1815Z |
| THE CITY OF SEATTLE, SEATTLE MUNICIPAL COURT, a municipal corporation, | ORDER |
| Defendant/Counter-Claim Plaintiff, | |
| and | |
| FRED BONNER and JANE DOE BONNER, and their marital community, GAYLE TAJIMA and JOHN DOE TAJIMA, and their marital community; YOLANDE WILLIAMS and JOHN DOE WILLIAMS, and their marital community; and MARK PARCHER and JANE DOE PARCHER, and their marital community, | |
| Defendants. | |

THIS MATTER comes before the Court on Defendants' Motion for Partial Summary Judgment, docket no. 46, and Plaintiff's Rule 56(f) Motion, docket no. 57, at 16-17. Having considered the pleadings, declarations and exhibits filed in support of and in opposition to the motions, and the record as a whole, the Court GRANTS IN PART and DENIES IN

ORDER  1–

PART Defendants' Motion for Partial Summary Judgment, and DENIES Plaintiff's Rule 56(f) Motion.

## I. BACKGROUND

Plaintiff, Bruce Eklund, alleges various claims against the City of Seattle, Seattle Municipal Court, Judge Fred Bonner, Gayle Tajima, Yolande Williams, and Mark Parcher (the "Defendants"). Second Am. Compl., docket no. 11, ¶ 38. The lawsuit stems from Eklund's employment at the Seattle Municipal Court, where he worked between February 2003 and July 2004. Eklund Decl., docket no. 60, ¶ 2. Eklund worked directly for then-presiding Judge Fred Bonner as well as Judge Bonner's top-level managers, namely Gayle Tajima, Yolande Williams, and Mark Parcher. Id. ¶ 5.

The Seattle Municipal Court's Finance and Administration Division hired Eklund as a Strategic Advisor I. Eklund Decl. ¶ 3. In a letter dated February 24, 2003, from Ed Meyer, Seattle Municipal Court's Human Resources Manager, to Eklund, the Seattle Municipal Court set forth "information regarding [his] employment," which had an effective start date of February 26, 2003. Id., Ex. 1 (the "February 24, 2003 Letter") at SMC 00414. First, the letter set forth Eklund's hourly rate and stated that "[y]our performance will be evaluated after four months, with a possible increase up to 5%; and reviewed every six months thereafter with up to additional 5% increases per evaluation period during the first two years of your appointment." Id., Ex. 1. Second, the February 24, 2003 Letter stated that "[a]s an exempt employee you serve at the discretion of the hiring authority; ordinances and personnel rules regarding hiring, discipline or termination from City employment do not apply to exempt employees." Id., Ex. 1. Third, the February 24, 2003 Letter set forth Eklund's eligibility "to earn leave merit leave in 2003, based on performance, to be used in 2004." Id., Ex. 1. Fourth, the February 24, 2003 Letter stated that Eklund was not eligible for overtime compensation, and it addressed the procedure for reporting absences. The February 24, 2003 Letter concluded by requesting that Eklund "acknowledge [his]

ORDER  2–

acceptance of this job offer by signing below and returning this letter to the Court's Human Resources office." Id., Ex. 1. One day later, Eklund signed and returned the February 24, 2003 Letter. Id. ¶ 3.

Eklund also received a copy of the Municipal Court of Seattle Employee Handbook. Id. ¶ 4. The Employee Handbook stated, in part, that "[t]his Handbook is a guide. It is not an employment contract. . . ." Id., Ex. 2 (Employee Handbook at 3). The Employee Handbook also contained an "At-will Employer Statement," which provided:

> With the exception of bargaining units positions and positions covered by the civil service, all other positions in the Municipal Court are 'at-will,' which means that, just as an employee would be free to resign at any time for any reason, the employer would have the right to terminate employment at any time, with or without cause, and without prior notice.

Parcher Decl., docket no. 48, ¶ 9, Ex. B (Employee Handbook at 6).[1]

In March 2004, all Seattle Municipal Court employees received a memorandum that reminded them that they were required to pay all of their outstanding tickets, fines, and penalties owed to the Seattle Municipal Court. Id., ¶ 2, Ex. A at MO 00353. To ensure that these obligations were met, the Seattle Municipal Court compiled a list of employees with outstanding debts to the Court. Id. ¶ 3. The Seattle Municipal Court launched an investigation of potential improprieties in April 2004, which culminated in a report that showed that a friend of Eklund's had made several obligation due date extensions on Eklund's citations. Id. ¶¶ 3-4. Eklund's friend set aside eight default penalties, totaling $190 in fees that Eklund would have had to pay had it not been for his friend's intervention. Id. ¶ 6. Eklund asserts that in 2003 he made arrangements with a Seattle Municipal Court employee for a payment plan regarding outstanding parking tickets, and that he subsequently paid off the tickets. Eklund Decl. ¶ 27; Davis Decl., docket no. 59, Ex. 3 (Eklund Dep.) at

---

[1] Eklund refers to an Employee Handbook dated 11/08/00, whereas Parcher refers to a 2003 Employee Handbook. Neither party has drawn any significance to the different versions of the Employee Handbook.

ORDER   3–

Vol. I, 100:8-23, 105:6-8.  On or about July 7, 2004, Eklund was put on administrative leave.  Eklund Decl. ¶ 37.  On July 29, 2004, Eklund received a letter terminating his employment with the Seattle Municipal Court.  Id. ¶ 43, Ex. 15 (termination letter).[2]

On August 26, 2004, Eklund filed a complaint with the Mayor of Seattle's Office, asserting that he was terminated in retaliation for whistleblowing.  Id. ¶ 51; LaBelle Decl., docket no. 51, ¶ 2, Ex. A (complaint letter).  Specifically, Eklund complained that he was terminated "in retaliation for intending to disclose to the [City of Seattle] Department of Finance information regarding over $1.5 million of lost parking revenue due to excessive fine reductions by the court's magistrates."  LaBelle Decl., Ex. A at MO 00418.  The Mayor's Office hired an independent investigator, former assistant U.S. Attorney Holly Morris Bennett, to investigate Eklund's complaint.  Id. ¶ 3.  After completing a four-month investigation, compiling 1,000 pages of documents and interviewing numerous witnesses, Ms. Bennett presented the Mayor's Office with her Report of Investigation on December 30, 2004.  Id. ¶¶ 3-4.  Ms. Bennett concluded that "either Eklund never formally 'blew the whistle' prior to his termination, or that, if he did, no one at the Seattle Municipal Court was aware of his doing so."  Id. ¶ 4.  In addition, Ms. Bennett reported that "the evidence showed that Eklund was terminated for fixing his own tickets, and that the Court was appropriate and justified in such a termination."  Id.

On January 3, 2005, the Mayor's Office informed Eklund that his request for relief was denied.  Id. ¶ 5, Ex. B (letter denying Eklund relief) at MO 00593.  The letter from the Mayor's Office explained that "[o]ur investigation has failed to produce any evidence that your previous employer, the Seattle Municipal Court, retaliated against you as a result of your allegations of improper governmental activity."  Id., Ex. B.  The letter further stated that "[i]f you are dissatisfied with this response, you may request a hearing pursuant to RCW

---

[2] For the purposes of this Order, the reasons why Eklund was terminated are of no legal consequence.

ORDER   4–

1 42.41.040.  If you desire a hearing, you must deliver a request for the hearing to the Office of
2 the Mayor within the time specified in RCW 42.41.040." Id., Ex. B.  Eklund never
3 requested a hearing or otherwise contacted the Mayor's Office to discuss an appeal of the
4 investigation's findings.  Id. ¶ 5; Trudeau Decl., docket no. 47, Ex. D at 6 (Request for
5 Admission No. 17) (Eklund's admission that he "did not appeal the Mayor's Office
6 investigation of [his] whistle-blowing allegations").

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material if it might affect the outcome of the suit under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### B. Eklund's Voluntary Dismissal of Six Claims

Defendants move for partial summary judgment on the following claims: (1) rights to free speech; (2) right to privacy; (3) breach of contract; (4) whistleblower retaliation; (5) "violation of and conspiracy to violate the Washington Public Disclosure Act" (the "PDA"); (6) "anticipatory violations of the PDA;" (7) negligence; and (8) invasion of privacy.  Defs.' Mot. at 1 (quoting Second Am. Compl. ¶ 38).[3]  Eklund responds that he "does not assert claims for invasion of privacy, negligence, First Amendment/interference with political participation, violation/anticipatory violation of the public disclosure act, or any free floating wrongful discharge claim. . . ."  Pl.'s Opp'n, docket no. 57, at 17-18.

---

[3] Defendants do *not* move for summary judgment on Eklund's remaining claims of: (1) wrongful discharge in violation of public policy; (2) "wrongful discharge;" (3) false light; (4) defamation; and (5) violation of Eklund's liberty rights pursuant to 42 U.S.C. § 1983.  Defs.' Mot. at 1 n.1.

ORDER   5–

Despite Eklund's representation, the Second Amended Complaint, at ¶ 38, expressly contains allegations of such claims. Accordingly, the Court construes Plaintiff's response as a voluntary dismissal and GRANTS Defendants' Motion for Partial Summary Judgment with respect to the six claims Eklund states he does not assert. The Court DISMISSES without prejudice Eklund's claims for: (1) "violation of state and/or federal constitutional rights to free speech, political participation;" (2) "violation of and conspiracy to violate the Washington Public Disclosure Act;" (3) "anticipatory violations of the PDA;" (4) "negligence;" (5) "invasion of privacy;" and (6) "wrongful discharge."[4] See Second Am. Compl. ¶ 38.

The two remaining claims that are the subject of Defendants' Motion for Partial Summary Judgment are Eklund's breach of contract and whistleblower retaliation claims.

### C. Eklund's FED. R. CIV. P. 56(f) Motion

Eklund argues that Defendants' Motion for Partial Summary Judgment should be denied pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, which provides:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.

FED. R. CIV. P. 56(f). The party moving for a Rule 56(f) continuance "must show (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." State of Cal. v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998). The Court should deny a Rule 56(f) motion if "the evidence sought is almost

---

[4] Although Defendants do not move for summary judgment on Eklund's "wrongful discharge" claim, which is alleged separate from Eklund's breach of contract and "discharge in violation of public policy" claims, the Court dismisses Eklund's "free floating" wrongful discharge claim based on Eklund's representation that he is not asserting such a claim.

ORDER   6–

1  certainly nonexistent or is the object of pure speculation." Id. at 779-80; Terrell v. Brewer,
2  935 F.2d 1015, 1018 (9th Cir. 1991).

3        Eklund argues that "outstanding and ongoing discovery is likely to produce additional
4  evidence relevant to claims at issue in this motion." Pl.'s Opp'n at 17.[5]  However, Plaintiff
5  has not submitted any affidavit that sets forth the specific and essential facts that he hopes to
6  elicit from further discovery.  Eklund is merely speculating on what he might find in any
7  upcoming discovery.  Speculation is an inappropriate basis to grant a Rule 56(f) motion.
8  Moreover, no further discovery is needed.  Defendants' summary judgment motion on
9  Eklund's breach of contract claim presents a contract interpretation issue, which is a question
10 of law in this case.  See Dice v. City of Montesano, 131 Wn.App. 675, 683-84 (2006).
11 Defendants' summary judgment on Eklund's whistleblower retaliation claim presents a
12 purely legal failure to exhaust issue because Eklund has admitted that he did not request a
13 hearing pursuant to RCW 42.41.040 to appeal the City's denial of Eklund's request for relief
14 based on his whistleblower complaint.  Accordingly, the Court DENIES Eklund's Rule 56(f)
15 Motion.

16       **D.**      **<u>Eklund's Breach of Contract Claim</u>**

17       Defendants move for summary judgment on Eklund's breach of contract claim,
18 arguing Eklund was an at-will employee who could have been terminated at any time without
19 cause.  Employment in the State of Washington is at will, unless that relationship is modified
20 by an implied or express agreement.  Greaves v. Med. Imaging Sys., Inc., 124 Wn.2d 389,
21 393 (1994); Thompson v. St. Regis Paper Co., 102 Wn.2d 219, 223 (1984).  Eklund argues
22 that his at-will status was modified by both an express agreement and an implied agreement.

23

---

24 [5] Eklund also asserts that his lead counsel, Cleveland Stockmeyer, has been unavailable since
25 July 2007 to consult on discovery matters because of Mr. Stockmeyer's urgent medical issues.  Stockmeyer Decl., docket no. 58, ¶¶ 3-5.  Eklund has not been without representation
26 during this period since he is also represented by Duncan Turner and Mark Davis.  Mr. Stockmeyer's lack of availability does not provide a basis for granting Plaintiff's Rule 56(f) Motion.

ORDER   7–

### 1. **Express Agreement**

"In Washington an employer has the right to discharge an employee, with or without cause, in the absence of a contract for a specified period of time." Greaves, 124 Wn.2d at 393. The burden of proving the existence of a contract is on the party asserting its existence. Siekawitch v. Washington Beef Producers, Inc., 58 Wn.App. 454, 461 (1990); Kuest v. Regent Assisted Living, Inc., 111 Wn.App. 36, 50-51 (2002) (to establish modification of the traditional employment-at-will relationship, employee must provide factual evidence of an offer, acceptance, consideration); Pacific Cascade v. Nimmer, 25 Wn.App. 552, 556 (1980) (discussing mutual assent requirement).

Defendants argue that the document titled, "Proposed Additions to Bruce's Position Description," Trudeau Decl., Ex. G, and an email that Eklund wrote to himself, Trudeau Decl., Ex. H, are not contracts. The Court agrees, particularly in light of Eklund's lack of opposition to Defendants' arguments. Thus, these documents cannot serve as the basis for Eklund's breach of contract claim. Defendants also move for summary judgment in response to Eklund's allegations that Gayle Tajima "promised Eklund a certain period of employment and/or raises at certain definite periods, as part of his contract, and/or that he would only be discharged for cause." Second Am. Compl. ¶ 9. Defendants argue that Tajima, the Seattle Municipal Court's Director of Finance, did not enter into any contract with Eklund, nor could she have because she lacked the authority to enter into an employment contract. Tajima Decl., docket no. 49, ¶¶ 3-5. In light of Eklund's failure to oppose this argument, the Court assumes that Eklund is no longer asserting that any contract executed by Tajima modified his at-will employment.

Defendants next argue that the February 24, 2003 Letter is not an express agreement that modified Eklund's at-will status. Eklund responds that the February 24, 2003 Letter, which he signed and returned, operated as an offer and acceptance, and thus as an express agreement, and that the agreement modified his at-will status. In their reply, Defendants do

ORDER 8–

not contest that the February 24, 2003 Letter constitutes an offer and acceptance; however, Defendants briefly argue that Eklund has failed to provide any consideration for the purported modification of his at-will status. Because the consideration issue was not presented in their opening motion, Eklund did not have an opportunity to respond, and the Court will assume for summary judgment purposes, that consideration was given.

Defendants' primary argument is that the February 24, 2003 Letter – even if it is considered an express agreement – did not modify Eklund's at will-status. "[T]he interpretation of an unambiguous contract is a question of law." Paradise Orchards Gen. P'ship v. Fearing, 122 Wn.App. 507, 517 (2004). "A provision is not ambiguous merely because the parties suggest opposing meanings." Id. "Whether a contract provision is ambiguous is also a question of law." Id. "An ambiguity exists in a provision when, reading the contract as a whole, two reasonable and fair interpretations are possible." Allstate Ins. Co. v. Hammonds, 72 Wn.App. 664, 670 (1994). The February 24, 2003 Letter is unambiguous – it expressly provided that Eklund, "as an exempt employee," is to "serve at the discretion of the hiring authority," and that "ordinances and personnel rules regarding hiring, discipline, or termination from City employment do not apply to exempt employees."[6] Because Eklund's employment was at the discretion of the Seattle Municipal Court, it was clearly at will. Eklund fails to address this important "serve at the discretion" provision of the February 24, 2003 Letter in his response brief.

Instead, Eklund argues that the February 24, 2003 Letter's language about his performance evaluations, potential for salary increases, and potential to receive merit leave during the first two years of employment expressly guaranteed him employment for a

---

[6] Defendants assert that the Employee Handbook's "At-Will Employer Statement" reinforces the Seattle Municipal Court's position that Eklund's employment was at will. The Court agrees that the Employee Handbook's at-will statement is consistent with the February 24, 2003 Letter's provision that Eklund serves at the discretion of the hiring authority. The Court further notes that both sides agree that the Employee Handbook is not a contract.

ORDER   9–

definite period of two years. Those terms, however, set forth basic benchmarks outlining what would happen at various stages of employment, but in no way guaranteed employment for a definite term. Eklund does not provide any legal authority to support the proposition that providing an at-will employee with the possibility of future pay increases or leave eligibility modifies his at-will status. The February 24, 2003 Letter did not expressly modify Eklund's at-will status.

### 2. Implied Agreement

As noted above, the February 24, 2003 Letter did not define the duration of Eklund's employment. "Generally, an employment contract, indefinite as to duration, is terminable at will by either the employee or employer" unless there is an "implied agreement" that the "contract is terminable by the employer *only* for cause." Thompson, 102 Wn.2d at 223 (emphasis in original). "[C]ourts will look at the alleged 'understanding,' the intent of the parties, business custom and usage, the nature of the employment, the situation of the parties, and the circumstance of the case to ascertain the terms of the claimed [implied] agreement." Greaves, 124 Wn.2d at 393 (quoting Roberts v. ARCO, 88 Wn.2d 887, 894 (1977)). An implied agreement modifying the at-will relationship "is subject to the usual rules applicable to contract formation." Kuest, 111 Wn.App. at 50. "[T]here must be enough factual conduct inconsistent with the express terms of the original contract . . . to satisfy the requisites of contractual modification." Id. Thus, the employee "must illustrate that [the employer] offered different employment terms after she began employment, and that she accepted those terms and gave consideration." Id. This Eklund cannot do.

First, Eklund argues the February 24, 2003 Letter implies that he would be employed for at least two years. The benchmarks for raises and leave at various stages of employment did not imply that he would, in fact, be employed for any definite duration. Second, Eklund argues that Defendants' ticket-fixing investigation shows that Defendants believed Eklund could only be terminated for cause. The Court disagrees. The mere undertaking of an

ORDER   10–

investigation of an at-will employee does not imply any modification of the employee's at-will status.  Third, Eklund argues that the nature of his employment as a top level Strategic Advisor indicates that his employment was not at will, but he offers no support for this proposition.  Defendants point out that, for employees, like Eklund, whose positions require "a particularly high degree of professional responsiveness and individual accountability," or require "a confidential or fiduciary relationship with the appointing authority," the Seattle Municipal Code ("SMC") § 4.13.010 provides for exemptions from the civil service rules that require just cause for discipline.  Fourth, Eklund argues that, as a result of the February 24, 2003 Letter, he "believed he was not an at-will employee, and could only be terminated for cause."  Pl.'s Opp'n at 20.  However, "a subjective understanding that he would be discharged only for cause . . . is insufficient to establish an implied contract to that effect."  Thompson, 102 Wn.2d at 224.  Taking all of these circumstances into account, the Court concludes that there was no implied agreement modifying Eklund's at-will status.

### 3. **Conclusion Re: Breach of Contract Claim**

In the absence of any express or implied agreement modifying Eklund's at-will employment relationship with the Seattle Municipal Court, Eklund was an at-will employee who could have been terminated at any time without cause.  Accordingly, the Court GRANTS Defendants' Motion for Partial Summary Judgment on the merits of Plaintiff's breach of contract claim, and DISMISSES with prejudice Plaintiff's breach of contract claim.

### E. **Eklund's Whistleblower Retaliation Claim**

Eklund's whistleblower retaliation claim is brought pursuant to Washington State statute and Seattle ordinance.  The state whistleblower statute makes it "unlawful for any local government official or employee to take retaliatory action against a local government employee because the employee provided information in good faith in accordance with the provisions of this chapter that an improper governmental action occurred."  RCW 42.41.040(1). The Seattle ordinance similarly protects employees who report improper

ORDER   11–

governmental action. SMC 4.20.810. Both the state statute and the city ordinance require an employee to file a complaint within thirty days of the occurrence of the alleged retaliatory action. RCW 42.41.040(2)-(3) ("In order to seek relief under this chapter, a local government employee *shall* provide a written notice of the charge of retaliatory action to the governing body of the local government . . . no later than thirty days after the occurrence of the alleged retaliatory action."); SMC 4.20.860 ("In order to seek relief, an employee who believes he or she has been retaliated against in violation of Section 4.20.810 *must* file a signed written complaint within thirty (30) days of the occurrence alleged to constitute retaliation") (emphasis added). This first step of the process – the filing of the complaint – is not in dispute in the present case because Defendants concede that Eklund "filed a timely whistleblower complaint." Defs.' Mot. at 11; LaBelle Decl. ¶ 2, Ex. A.

The second step of the process – the appeal – is at issue in the present case. Defendants argue that Eklund failed to exhaust his administrative remedies regarding his whistleblower retaliation claim by failing to request a hearing before an administrative law judge to review the City's denial of relief. Eklund admits that he did not appeal the City's January 3, 2005 denial of his request for relief. The question presented to the Court is whether an appeal is mandatory under state or local law.

The state statute provides, in pertinent part, that:

> (4) Upon receipt of . . . the response of the local government . . . , the local government employee *may* request a hearing to establish that a retaliatory action occurred and to obtain appropriate relief as defined in this section. The request for a hearing *shall* be delivered to the local government within fifteen days of delivery of the response from the local government . . . .

RCW 42.41.040(4) (emphasis added). Defendants admit that the language in the state statute providing that an "employee may request a hearing" is permissive. Defs.' Reply, docket no. 63, at 9. Defendants attempt to contrast this language with the Seattle ordinance's "shall" request a hearing language. However, Defendants have misconstrued the Seattle ordinance –

ORDER  12–

nowhere does it provide that an employee "shall request a hearing." The applicable section of the Seattle Municipal Code provides in full:

> *If an employee* who has filed a complaint of retaliation under this section *is dissatisfied* with the response *and desires a hearing pursuant to Section 42.41.040 RCW, the employee shall deliver a request for hearing to the Office of the Mayor within the time limitations specified in that section.* Within five (5) working days of receipt of the request for hearing, the City shall apply to the state office of administrative hearings for a hearing to be conducted as provided in Section 42.41.040 RCW.

SMC 4.20.860(C) (emphasis added). The SMC 4.20.860(C)'s language "*[i]f* an employee . . . *desires* a hearing" is parallel to RCW 42.41.040(4)'s language "the local government employee *may* request a hearing." Both are permissive. Similarly, the SMC 4.20.860(C)'s language following the permissive clause, which states that "the employee *shall* deliver a request for hearing . . . within the [state statute's] time limitations" is parallel to RCW 42.41.040(4)'s language following the permissive clause, which states that "[t]he request for a hearing *shall* be delivered to the local government within fifteen days." Under both state and local law, the "shall" language refers to the timing for delivering a request, in situations where an employee desires to make a request. Contrary to Defendants' argument, the "shall" language in Seattle Municipal Code 4.20.860(C) does not require an employee to request a hearing. The Court's interpretation that Seattle Municipal Code 4.20.860(C) does not require an employee to request a hearing is buttressed by the fact that the city ordinance directly refers to RCW 42.21.040, which permits an employee to request a hearing, but does not require it.

Neither party has provided any case law that supports a different interpretation of Seattle Municipal Code 4.20.860(C). Defendants rely on Ryder v. Port of Seattle, which states that "[a]dministrative remedies must be exhausted before the courts will intervene: (1) when a claim is cognizable in the first instance by an agency alone; (2) when the agency's authority establishes clearly defined machinery for the submission, evaluation and

ORDER   13–

resolution of the complaints by aggrieved parties; and (3) when the relief sought can be obtained by resort to an exclusive or adequate procedural remedy." Ryder 50 Wn.App. 144, 151 (1987) (internal quotations and citations omitted). Seattle Municipal Code 4.20.860(C) does not establish "clearly defined machinery for the submission" of complaints to an administrative law judge; rather, it permits an employee to request a hearing, if one is desired by the employee, but it does not require an employee to request a hearing. Eklund relies on two cases involving the exhaustion of remedies under collective bargaining agreements. See Keenan v. Allan, 889 F. Supp. 1320, 1365 (E.D. Wash. 1995); Morales v. Westinghouse Hanford Co., 73 Wn.App. 367, 371 (1994). These cases have no applicability to the present case because Eklund was not a union employee and did not have any collective bargaining agreement with its own grievance process. Defendants also point out that they are not arguing that Eklund failed to exhaust remedies under a collective bargaining agreement (or any other contract) prior to pursuing statutory remedies.

Neither RCW 42.41.040(4) nor SMC 4.20.860(C) require an employee to appeal a local government's denial of a whistleblower retaliation claim prior to filing a whistleblower claim in court. Accordingly, the Court DENIES Defendants' Motion for Partial Summary Judgment as to Eklund's whistleblower retaliation claim.

## III.   CONCLUSION

(1)   The Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Partial Summary Judgment, docket no. 46, as follows:

   (a)   The Court GRANTS Defendants' Motion for Partial Summary Judgment with respect to the six claims Eklund states he does not assert, and DISMISSES without prejudice Eklund's claims for: (1) "violation of state and/or federal constitutional rights to free speech, political participation;" (2) "violation of and conspiracy to violate the Washington Public Disclosure Act;" (3) "anticipatory violations of the PDA;" (4) "negligence;" (5) "invasion of privacy;" and (6) "wrongful discharge."

ORDER   14–

    (b) The Court GRANTS Defendants' Motion for Partial Summary Judgment on the merits of Plaintiff's breach of contract claim, and DISMISSES with prejudice Plaintiff's breach of contract claim.

    (c) The Court DENIES Defendants' Motion for Partial Summary Judgment as to Plaintiff's whistleblower retaliation claim.

  (2) The Court DENIES Plaintiff's Rule 56(f) Motion, docket no. 57, at 16-17.

IT IS SO ORDERED.

DATED this 9th day of January, 2008.

            /s/ Thomas S. Zilly
            Thomas S. Zilly
            United States District Judge

ORDER  15–